UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA GIBSON and JILL SHULER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Julia Gibson and Jill Shuler ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Unilever United States, Inc. ("Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to the Plaintiffs, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant formulates, manufactures, advertises, and sells Knorr Rice & Pasta Sides (the "Products") throughout the United States, including in New York.

2. Defendant represents to consumers through its packaging that the Products contain "No Artificial Flavors or Preservatives." Defendant makes these claims in order to capitalize on consumers' preference for natural foods that do not contain synthetic ingredients.

3. Unbeknownst to consumers, however, Defendant's claims are false because the Products do contain synthetic non-natural flavoring and preservative ingredients.

4. Plaintiffs have purchased several of the Products. Now, on behalf of themselves and all others similarly situated, they assert claims for violations of New York General Business Law §§ 349 and 350, and for breach of express warranty.

1

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00 exclusive of interest and costs, there are over 100 members of the putative class, and at least one class member is a citizen of a state different than Defendant.

6. This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in New York.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events that gave rise to Plaintiffs' claims occurred in this District.

## PARTIES

8. Plaintiff Julia Gibson is a citizen of New York who resides in Brooklyn, New York. Ms. Gibson has purchased the Products for personal use at various times during the applicable statute of limitations. For example, in or around January 2025, she purchased the Knorr Chicken Rice Side from Shoprite in Brooklyn for approximately $3. In purchasing the Products, Ms. Gibson relied on Defendant's false, misleading, and deceptive marketing of the Products as containing "No Artificial Flavors or Preservatives." Ms. Gibson understood these representations to mean that the Products did not contain any synthetic flavors or preservatives, but in fact, the Knorr Chicken Rice Side that she purchased contained synthetic flavoring and preservative ingredients, including Maltodextrin, Disodium Inosinate, Disodium Guanylate and MSG. Had Ms. Gibson known that Defendant's representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

9. Plaintiff Jill Shuler is a citizen of New York who resides in Brooklyn, New York.

2

Ms. Shuler has purchased the Products for personal use at various times during the applicable statute of limitations. For example, in or around December 2024, she purchased the Knorr Alfredo Broccoli Pasta Side from the Stop & Shop in Brooklyn for approximately $1.69. In purchasing the Products, Ms. Shuler relied on Defendant's false, misleading, and deceptive marketing as containing "No Artificial Flavors or Preservatives." Ms. Shuler understood these representations to mean that the Products did not contain any synthetic flavors or preservatives, but in fact, the Knorr Alfredo Broccoli Pasta Side that she purchased contained synthetic flavoring and preservative ingredients, including Maltodextrin, Sodium Citrate, Disodium Inosinate, Disodium Guanylate and MSG. Had Ms. Shuler known that Defendant's representations were false and misleading, she would not have purchased the Products or would have only been willing to purchase the Products at a lesser price.

10. Defendant Unilever United States, Inc. is a corporation organized under the laws of Delaware with its principal place of business located at 800 Sylvan Ave., Englewood Cliffs, NJ 07632. Defendant formulates, advertises, manufactures, and/or sells the Products throughout New York and the United States.

## GENERAL ALLEGATIONS

1. Defendant's labeling on the Products states that they contain "No Artificial Flavors or Preservatives." It makes the representation under the header "Our Promise":



2. Defendant's labeling and advertising puts forth a straightforward, material message: the Products contain only flavoring and preservative ingredients that are natural.

3. Defendant makes these natural claims in an effort to capitalize on the growing market for natural products. Health-conscious consumers are willing to pay a price premium for products labeled and advertised as natural because they believe that such products are safer and/or healthier to consume.

4. But, unfortunately for consumers, the Products do contain both artificial flavors and preservatives, including the following:

> ***Maltodextrin***: Maltodextrin is a synthetic flavorant and sugar substitute that Defendant uses to sweeten the Products. To produce maltodextrin, acids, enzymes, or acids and enzymes are applied in sequence to a starch slurry to induce partial hydrolysis (saccharification). In other words, the acids or enzymes convert or depolymerize starch to glucose or maltose molecules. Once maltose content is high enough, the acids or enzymes are neutralized, removed or deactivated, and the resulting product is then refined, purified and concentrated. Synthetic chemicals are often used to extract and purify the enzymes used to produce Maltodextrin.
>
> ***Disodium Inosinate***: Disodium Inosinate is a synthetic flavor enhancer. When combined with Disodium Guanylate, it imparts an umami (savory or meaty) flavor. It is made through one of two manufacturing methods. In the first method, bacterial fermentate carbon source or sugar is used to produce inosine, which reacts with phosphoryl chloride to get inosinic acid, which is then neutralized. Alternatively, Disodium Inosinate can be produced through the degradation of nucleotides into nucleic acid from yeast extract.
>
> ***Disodium Guanylate***: Disodium Guanylate is a synthetic flavor enhancer. When combined with Disodium Inosinate, it imparts an umami (savory or meaty) flavor. It is manufactured by inducing sugar fermentation to obtain guanosine, which reacts with phosphoryl chloride, and it is then neutralized with sodium hydroxide.
>
> ***Citric Acid***: Citric Acid is a synthetic ingredient used to add flavor and as a preservative in foods. Although citric acid can be produced naturally, it is not economically feasible to do so and the USDA Agricultural Marketing Service has noted that natural citric acid is "no longer commercially available." Instead, only synthetic citric acid is used in packaged foods, including the Products. Synthetic citric acid is manufactured using a processed derivative of black mold, *Aspergillus niger*. Calcium hydroxide and sulfuric acid are often used in processing citric acid as are GMO sugar beets and GMO corn. The FDA has determined that citric acid is synthetic and not natural. For instance, in an

August 16, 2001 Warning Letter sent to Oak Tree Farm Dairy, Inc., the FDA wrote that the label for "OAKTREE ALL NATURAL LEMONADE" was "inappropriate" because "natural" means "nothing artificial or synthetic" and the product contained citric acid. Likewise, in an August 29, 2001 Warning Letter to the Hirzel Canning Company, the FDA wrote that chopped tomatoes should not be labeled "ALL NATURAL" because they contained citric acid.

***Monosodium Glutamate (MSG)*:**  MSG is a synthetic ingredient used to add umami flavor to foods.  While MSG exists naturally, the MSG used in packaged foods, including the Products, is produced commercially using manufacturing process and is synthetic.  Specifically, MSG is derived from glutamic acid, an amino acid, and the manufacturing process results in the addition of chemical byproducts and contaminants.

***Sodium Citrate*:**  Sodium Citrate is a synthetic, non-natural ingredient used in packaged foods, including the Products, to create a sour flavor and as a preservative.  Sodium Citrate is the trisodium salt of citric acid, which is synthetically created by mycological fermentation of crude sugar stocks.  Sodium citrate is listed as being "synthetic" under 7 C.F.R. § 205.605.

5.      The Products each multiple synthetic flavoring and/or preservative ingredients:

| Product | Synthetic Flavoring/Preservative Ingredients |
|---|---|
| Knorr Cilantro Lime Rice | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>Citric Acid<br>MSG |
| Knorr Marinara Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Buffalo Chicken Flavor Pasta Side | Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Cajun Chicken Flavored Rice | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Alfredo Broccoli Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate |

5

| | |
|---|---|
| | Disodium Guanylate<br>MSG |
| Knorr Chicken Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Butter Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Butter & Herb Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Alfredo Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Stroganoff Pasta Side | Maltodextrin<br>Sodium Citrate<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Parmesan Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Creamy Chicken Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Chicken Broccoli Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |

|  |  |
|---|---|
| Knorr Chicken Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Spanish Rice Side | Maltodextrin<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Herb & Butter Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Mushroom Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Chicken Fried Rice Side | Maltodextrin<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Cheddar Broccoli Rice Side | Maltodextrin<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Cheddar Broccoli Pasta Side | Maltodextrin<br>Sodium Citrate<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Cheesy Cheddar Pasta Side | Maltodextrin<br>Sodium Citrate<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate |

|  | MSG |
|---|---|
| Knorr Creamy Garlic Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Chicken Broccoli Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Creamy Chicken Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Mexican Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Teriyaki Noodles Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate |
| Knorr Four Cheese Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Garlic Parmesan Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Family Size Alfredo Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Family Size Chicken Pasta Side | Maltodextrin<br>Disodium Inosinate |

|  | Disodium Guanylate<br>MSG |
|---|---|
| Knorr Family Size Creamy Garlic Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Family Size Cheddar Broccoli Pasta Side | Maltodextrin<br>Sodium Citrate<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Teriyaki Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate |
| Knorr Rice Medley Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Taco Rice Side | Maltodextrin<br>Citric Acid<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Garlic & Olive Oil Pasta Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Creamy Pesto Pasta Side | Maltodextrin<br>Sodium Citrate<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |
| Knorr Yellow Rice Side | Maltodextrin<br>Disodium Inosinate<br>Disodium Guanylate<br>MSG |

9

6. Defendant has profited enormously from its false and misleading representations that the Products contain only natural flavoring and preservative ingredients. The purpose of this action is to require Defendant to change its labeling claims and to provide consumers with monetary relief for its deceptive and misleading product claims.

## CLASS ACTION ALLEGATIONS

7. Plaintiffs seek to represent a class defined as all persons in the United States who, during the maximum period of time permitted by law, purchased Defendant's Products for personal, family, or household consumption, and not for resale (the "Nationwide Class").

8. Plaintiffs also seek to represent a subclass defined as all person in New York who purchased the Products (the "New York Subclass") (collectively with the Nationwide Class, the "Classes").

9. **Numerosity Fed. R. Civ. P. 23(a)(1).** Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

10. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)).** There is a well-defined community of interest in the questions of law and fact involved in this case. Common questions of law and fact that exist as to all Class members and predominate over questions affecting only individual Class members include, but are not limited to:

   (a) the true nature and presence of synthetic flavoring and preservative ingredients in the Products;

   (b) whether Defendant's marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and misleading;

(c) whether Plaintiffs and members of the Classes have suffered damages as a result of Defendant's actions, and the amount thereof;

(d) whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon Defendant by Plaintiffs and the Classes; and

(e) whether Plaintiffs and members of the Classes are entitled to attorneys' fees and costs.

11.     **Typicality (Fed. R. Civ. P. 23(a)(3)).**  The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs were exposed to Defendant's false and misleading marketing, purchased Defendant's Products, and suffered a loss as a result of those purchases.

12.     **Adequacy (Fed. R. Civ. P. 23(a)(4)).**  Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class members they seeks to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

13.     **Superiority (Fed. R. Civ. P. 23(b)(3)).**  The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Even if every member of the Classes could afford to pursue individual litigation, the court system could not.  Individualized litigation would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed.  Individualized litigation would also increase the delay and expense to all parties and would present the potential for varying, inconsistent, or contradictory judgments—magnifying the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  In contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents

far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues would ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues. Plaintiffs anticipate no difficulty in the management of this action as a class action.

## CAUSES OF ACTION
## COUNT I

### Violation of the New York General Business Law § 349
### (On behalf of the New York Subclass)

14. Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

15. Plaintiffs bring this cause of action on behalf of herself and members of the New York Subclass against Defendant.

16. Plaintiffs and New York Subclass members are "persons" within the meaning of the GBL § 349(h).

17. Defendant is a "person, firm, corporation or association or agent or employee thereof" within the meaning of GBL § 349(b).

18. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

19. Defendant made false and misleading statements by marketing the Products as containing "No Artificial Flavors or Preservatives" when the Products in fact contained both synthetic flavoring and preservative ingredients.

20. In doing so, Defendant engaged in deceptive acts or practices in violation of GBL § 349.

21. Defendant's deceptive acts or practices were materially misleading. Defendant's

conduct was likely to and did deceive reasonable consumers, including Plaintiffs, about the quality of its Products, as discussed throughout.

22. Plaintiffs and New York Subclass members were unaware of, and lacked a reasonable means of discovering, the material facts that Defendant withheld.

23. Defendant's actions set forth above occurred in the conduct of trade or commerce.

24. The foregoing deceptive acts and practices were directed at consumers.

25. Defendant's misleading conduct concerns widely purchased consumer products and affects the public interest. Defendant's conduct includes unfair and misleading acts or practices that have the capacity to deceive consumers and are harmful to the public at large. Defendant's conduct is misleading in a material way because they fundamentally misrepresent the production and quality of the Products.

26. Plaintiffs and New York Subclass members suffered ascertainable loss as a direct and proximate result of Defendant's GBL violations in that: (i) they would not have purchased the Products had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiffs and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

27. On behalf of herself and other members of the New York Subclass, Plaintiffs seek to enjoin Defendant's unlawful acts and practices described herein, to recover actual damages or $50, whichever is greater, reasonable attorney's fees and costs, and any other just and proper relief available under GBL § 349.

## COUNT II

**Violation of the New York General Business Law § 350**
**(On behalf of the New York Subclass)**

28. Plaintiffs incorporate by reference and re-alleges herein all paragraphs alleged above.

29. Plaintiffs bring this cause of action on behalf of herself and members of the New York Subclass against Defendant.

30. GBL § 350 provides that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

31. Defendant's labeling and advertisement of the Products was false and misleading in a material way. Specifically, Defendant advertised the Products as containing "No Artificial Flavors or Preservatives" when the Products in fact contained both synthetic flavoring and preservative ingredients.

32. This misrepresentation was consumer-oriented and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

33. This misrepresentation has resulted in consumer injury or harm to the public interest.

34. As a result of this misrepresentation, Plaintiffs and New York Subclass members have suffered economic injury because: (i) they would not have purchased the Product had they known the truth; and (ii) they overpaid for the Products on account of the misrepresentations and omissions, as described herein. As a result, Plaintiffs and New York Subclass members have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as actually sold.

35. By reason of the foregoing and as a result of Defendant's conduct, Plaintiffs and

New York Subclass members seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars, whichever is greater, three times actual damages, reasonable attorneys' fees and costs, and any other just and proper relief available under GBL § 350.

**COUNT III**

**Breach of Express Warranty**
**(On behalf of the Nationwide Class and the New York Subclass)**

36. Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

37. Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

38. Defendant, as the producer, marketer, distributor, and/or seller, expressly warranted that the Products contained "No Artificial Flavors or Preservatives."

39. Defendant's representations and warranties were part of the description of the goods and the bargain upon which the Products were offered for sale and purchased by Plaintiffs and members of the Classes.

40. However, the Products do not conform to Defendant's representations and warranties because the Products contain synthetic flavoring and preservative ingredients. By falsely representing the Products in this way, Defendant breached express warranties.

41. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and members of the Classes have been injured and harmed in an amount to be proven at trial. Had Plaintiffs and members of the Classes known the Products in fact contained a synthetic ingredient, they would not have purchased the Products, or only would have been willing to pay substantially less for them.

42. Prior to filing the initial complaint in this action, Defendant was served via certified mail with a pre-suit notice letter on behalf of Plaintiffs that complied in all respects with U.C.C. §§ 2-313 and 2-607.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as representatives of the Nationwide Class and the New York Subclass, and naming Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class and New York Subclass;

(b) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(c) For an order finding in favor of Plaintiffs, the Nationwide Class, and the New York Subclass on all counts asserted herein;

(d) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

(h) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable as of right.

Dated: February 26, 2025                    **ARISOHN LLC**

                                            By: */s/ Joshua D. Arisohn*
                                                Joshua D. Arisohn

16

                                Joshua D. Arisohn
                                94 Blakeslee Rd.
                                Litchfield, CT 06759
                                Telephone: (646) 837-7150
                                Email: josh@arisohnllc.com

                                *Attorney for Plaintiffs*

Case 1:25-cv-01088-ENV-CLP    Document 1    Filed 02/26/25    Page 17 of 17 PageID #: 17